## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

RICARDO JOSE FERNANDEZ,

      Plaintiff,

v.                                                                   Case No.  4:19-cv-113-RH/MJF

UNITED STATES OF AMERICA,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before this court on Defendant's motion for summary judgment. (Doc. 18).  Plaintiff responded. (Docs. 22 & 23). Defendant replied, (Doc. 24), and Plaintiff filed two sur replies without having obtained permission from the court. (Docs. 25 & 28). For the reasons set forth below, the undersigned recommends that Defendant's motion for summary judgment be granted.[1]

## I.    Background

On March 5, 2019, Plaintiff commenced this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, alleging that medical providers at hospitals run by the Department of Veteran's Affairs ("VA") negligently provided

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

medical care. Specifically, Plaintiff alleges that VA physicians and nurses prescribed and treated Plaintiff with medications known as "beta blockers" and "ACE inhibiters,"[2] despite Plaintiff informing these individuals that he was allergic to these drugs. Plaintiff alleges that this resulted in substantial damage to his heart. (Doc. 7 at 3-4).

On December 10, 2019, the undersigned issued a final scheduling order setting March 31, 2020, as the discovery deadline and setting a deadline to file dispositive motions twenty-one days thereafter. (Doc. 17). Additionally, the undersigned set January 15, 2020, as the deadline for Plaintiff to disclose his expert witnesses. (*Id.*). Plaintiff did not disclose any expert witnesses on or before that deadline. On January 30, 2020, Defendant informed Plaintiff that it intended to move for summary judgment. (Doc. 18 at 1). On February 4, 2020, Plaintiff provided Defendant a document titled "Expert Witness Writte [sic] Report" that identified Plaintiff as his sole expert witness. (Doc. 18-1). Plaintiff's expert disclosure is one page of text and it merely summarizes Plaintiff's medical treatment from May 5,

---

[2] Beta Blockers are a class of drugs that are sometimes used to treat high blood pressure or hypertension. *See GlaxoSmithKline, LLC v. Teva Pharm. USA, Inc.*, 313 F. Supp. 3d 582, 586 (D. Del. 2018). "ACE inhibitors comprise a class of chemical compounds that have antihypertensive properties and are consequently useful in pharmaceuticals aimed at treating hypertension." *Warner-Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1330 (Fed. Cir. 2005).

2007, through September 13, 2016. (*Id.*). This expert disclosure notes the type of medication that Plaintiff was prescribed, the physicians who prescribed the medications and the dates on which they did so, how Plaintiff felt after taking the medication, and the places Plaintiff sought treatment. (*Id.* at 2). On February 5, 2020, Defendant filed its "Motion to Strike Expert Disclosures and for Summary Judgment." (Doc. 18).

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary

judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   Discussion

Defendant argues that Plaintiff has failed to create a genuine issue of material fact with respect to his FTCA claim. (Doc. 18 at 7).

The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001)). Under the FTCA, the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances," applying the applicable state law. *See* 28 U.S.C. § 2674; *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1203 (11th Cir. 2008). Thus, when addressing an FTCA claim, courts

must apply the law of the state where the alleged tortious act occurred. *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015); *Duque v. United States*, 216 F. App'x 830, 832 (11th Cir. 2007); *Stone*, 373 F.3d at 1130. Here, Plaintiff alleges that, in Florida, VA physicians and nurses treated Plaintiff with medication that damaged his heart. (Doc. 7 at 3-4). Therefore, Florida tort law applies to Plaintiff's claim.

Florida Statute § 766.106(1)(a) defines a claim for "medical negligence" or "medical malpractice" as "a claim arising out of the rendering of, or the failure to render, medical care or services." *J.B. v. Sacred Heart Hosp.*, 635 So. 2d 945, 948-49 (Fla. 1994). To establish a claim for medical negligence in Florida, a plaintiff must establish: (1) the standard of care owed by the defendant; (2) the defendant's breach of the standard of care; and (3) that the breach proximately caused the damages claimed (*i.e.*, that the damages were the direct result of the medical care or treatment). *Gooding v. Univ. Hosp. Bldg. Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984); *see Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001); *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014).

Here, Plaintiff did not offer evidence sufficient to create a genuine issue of material fact regarding: (1) the standard of medical care; (2) breach of the standard; and (3) proximate causation.

A.    <u>**Failure to Create a Genuine Issue as to The Standard of Care**</u>

Section 766.102, Florida Statutes, defines the standard of care for medical malpractice claims as "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Fla. Stat. § 766.102(1); *Saunders*, 151 So. 3d at 441. That is, a doctor must "provide the care that a reasonably prudent physician would provide." *Saunders*, 151 So. 3d at 441. Generally, a plaintiff must provide expert testimony to establish the prevailing professional standard of care. *Lambert v. United States*, 198 F. App'x 835, 839 (11th Cir. 2006); *Bush v. United States*, 703 F.2d 491, 495-96 (11th Cir. 1983); *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995).[3]

Plaintiff has not submitted an affidavit or deposition testimony from a medical expert regarding the standard of care that applied in his case. His expert disclosure report pursuant to Rule 26(a)(2)—which Defendant has moved to have stricken— identified only Plaintiff as an expert witness. The disclosure also was only one page

---

[3] There is one exception, not applicable here, in cases where "only the exercise of common sense and ordinary judgment are required" to prove medical negligence. *McCall v. United States*, 663 F. Supp. 2d 1276, 1288-89 (N.D. Fla. 2009), *rev'd in part on other grounds, McCall v. United States*, 571 F. App'x 744 (11th Cir. 2014); *Stepien v. Bay Mem'l Med. Ctr.*, 397 So. 2d 333, 334 (Fla. 1st DCA 1981). "This exception applies where the medical provider's want of skill or lack of care 'is so obvious as to be within the understanding of laymen' such that only common knowledge and experience are required to judge it." *McCall*, 663 F. Supp. 2d at 1289 (quoting *Atkins v. Humes*, 110 So. 2d 663, 665-66 (Fla. 1959)).

of text, and it merely summarizes Plaintiff's medical treatment from May 5, 2007, through September 13, 2016. (Doc. 18-1 at 2). That document clearly does not create a genuine issue of material fact regarding the standard of care that the VA owed to Plaintiff.

Plaintiff subsequently filed a "rebuttal," which could be construed as a supplemental expert disclosure. (Doc. 22). In this "rebuttal," Plaintiff included the following opinions:

- "It is my opinion that Dr. Sahlin should not have continue to prescribe Mr. Fernandez with beta blockers";

- "It appears that Mr. Fernandez had a allergic reaction to the new medication which was a (beta blockers)";

- "It appears that Mr. Fernandez was prescribed medication that would do more harm than good";

- "It appears do to the overwhelmingly amount of beta blockers, Ace inhibitors. That Ricardo Fernandez was prescribed caused Mr. Fernandez to have 40 TO 50% of his heart left";

- "This tells me that Dr. Dragstedt. Was definitely aware of beta blockers and patient's intolerance to them there is no denying this. And for the Dr. to continue to prescribe beta blockers to Mr. Fernandez. As well as prescribe beta blockers for the following day. It is definitely in adequate care it is my opinion that Dr. Carl A. Dragstedt should have stopped completely prescribing beta blockers"; and

- "This tells me because of the beta blockers that Ricardo Fernandez had been receiving for today head lowered his blood pressure to low to where cause his heart to drop a another 20%."

(Doc. 22 at 2-10) (typographical and grammatical errors in original). This document also is insufficient to create a genuine issue of material fact regarding the standard of care. It does not indicate the applicable standard of care, but even if it did, Plaintiff has not shown that he has sufficient expertise to offer an admissible opinion regarding the standard of care that a physician owes to a patient.

In a FTCA case, courts first apply the forum state's rules to determine a witness's competence to testify. Fed. R. Evid. 601; *Dutton v. United States*, 621 F. App'x 962, 966 (11th Cir. 2018); *Liebsack v. United States*, 731 F.3d 850, 855-56 (9th Cir. 2013); *Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002). Florida law provides that in a medical malpractice action, in addition to other qualifications, a "person may not give expert testimony concerning the prevailing professional standard of care unless the person is a health care provider who holds an active and valid license . . . ." Fla. Stat. § 766.102(5). Plaintiff has not offered any evidence indicating that he is a physician or medical provider, or that he has substantial knowledge regarding the standard of care in the relevant community. Indeed, Plaintiff concedes that he has no formal medical or pharmacological training. (Doc. 23 at 3) ("It is true that Ricardo Fernandez has no formal education but has been educated by reading the medical records.").

Because Plaintiff concedes that he does not have the requisite medical training, under Florida law, he is not competent to testify as an expert witness as to

the appropriate standard of medical care in his case. When addressing a summary judgment motion, a court may only consider evidence that would be admissible at trial. *Property Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 604 n.4 (11th Cir. 1985); *see Macuba v. Deboer*, 193 F.3d 1316, 1325 (11th Cir. 1999). Here, Plaintiff's opinion is not admissible under Florida law. Accordingly, this court may not consider it. Because Plaintiff has failed to offer any admissible evidence regarding the relevant standard of care, he has failed to create a genuine issue of material fact on an essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that summary judgment is proper when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). For this reason alone, summary judgment for Defendant is proper. *Cagle v. United States*, 738 F. App'x 633, 640 (11th Cir. 2018) (holding that the district court properly granted summary judgment when the plaintiff "did not present any expert testimony to establish *what* standard of care the VA owed" to her).

### B.      <u>Failure to Create a Genuine Issue as to Breach of the Standard</u>

To create a genuine issue of material fact as to breach of the standard of care, a plaintiff must submit admissible evidence demonstrating that the defendant's actions breached the standard of care. *Gooding*, 445 So. 2d at 1018. Because Plaintiff failed to submit admissible evidence regarding the relevant standard of care, he

necessarily also has failed to create a genuine issue of material fact regarding breach of that standard. For this reason, too, summary judgment for Defendant is warranted in this case.

### C.    <u>Failure to Create a Genuine Issue Regarding Causation</u>

The fact that Plaintiff's heart is damaged does not in itself indicate that Defendant's conduct caused that damage. *See* Fla. Stat. § 766.102(3)(b) ("The existence of a medical injury does not create any inference or presumption of negligence against a health care provider . . . ."). To create a genuine issue of material fact as to causation, a plaintiff must put forth admissible evidence indicating "that the injury more likely than not resulted from the defendant's negligence." *Gooding*, 445 So. 2d at 1020. Plaintiff also failed to submit sufficient evidence to create a genuine issue as to this element. His own opinion that certain medications prescribed and administered by the VA caused damage to his heart is insufficient to create a genuine issue as to causation because Plaintiff does not qualify as an expert witness under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and this opinion is an unexplained conclusion about a key issue.

### 1.    *Plaintiff's Failure to Qualify as an Expert Witness*

The Federal Rules of Evidence allow a witness who is qualified as an expert because of his "knowledge, skill, expertise, training, or education" to offer opinion

testimony when certain requirements are satisfied. Fed. R. Evid. 702;[4] *see City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 562 (11th Cir. 1998). Under Rule 702 as interpreted by *Daubert*, the trial court must act as a "gatekeeper" and ensure that speculative and unreliable expert opinions that fail to employ the intellectual rigor that characterizes the practice of an expert in the relevant field do not reach the jury. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

In performing its gatekeeping function under Rule 702, a district court must perform a three-part inquiry to determine the admissibility of expert testimony. The court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of

---

[4] Rule 701 of the Federal Rules of Evidence permits a lay witness to offer opinion testimony, but only when his opinion is based on the witness's perception, would be helpful in determining a fact in issue, and is not based on scientific, technical or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. An opinion regarding medical causation is within the scope of Rule 702 and, therefore, admissible only when elicited from an expert witness. *Wingster v. Head*, 318 F. App'x 809, 815 (11th Cir. 2009) (holding that medical causation entails "a technical and scientific issue that requires the specialized knowledge of an expert medical witness"); *Webster v. Offshore Food Serv*., 434 F.2d 1191, 1193 (5th Cir. 1970) (noting that "technical questions of medical causation" are "beyond the competence of lay determination"). Thus, any lay opinion Plaintiff might offer regarding the cause of the damage to his heart would not be admissible under Rule 701.

fact, through the application of scientific, technical, or specialized
expertise, to understand the evidence or to determine a fact in issue.

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir.

2003) (quoting *City of Tuscaloosa*, 158 F.3d 548 at 562). In other words, the court

must consider the "qualification, reliability, and helpfulness" of the opinion. *United

States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Quiet Tech. DC-8,

Inc.*, 326 F.3d at 1341). Courts must keep their "gatekeeping inquiry" tied to the

facts of the particular case. *Adams*, 760 F.3d at 1327. The party offering the

purported expert has the burden of showing, by a preponderance of the evidence,

that each of these requirements has been met. *Rink v. Cheminova, Inc.*, 400 F.3d

1286, 1292 (11th Cir. 2005); *Frazier*, 387 F.3d at 1260 (citing *McCorvey*, 298 F.3d

at 1257).

Determining whether a witness is qualified to testify as an expert "requires

the trial court to examine the credentials of the proposed expert in light of the subject

matter of the proposed testimony." *Clena Inv., Inc. v. XL Specialty Ins. Co.*, 280

F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Welcome, Inc.*, 239 F. Supp.

2d 1308, 1314-16 (N.D. Ga. 2002)). An expert's qualification may be based on any

combination of "knowledge, skill, experience, training, or education." *Hendrix v.

Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009) (citing *Leathers v. Pfizer,

Inc.*, 233 F.R.D. 687, 692 (N.D. Ga. 2006)).

The standard for "qualification" is not stringent. *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1286 (N.D. Fla. 2017) (citing *Hendrix*, 255 F.R.D. at 578). Although a purported expert witness does not need to be a leading authority in the field, he must be at least minimally qualified in the relevant field. *Hendrix*, 255 F.R.D. at 578; *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by rule on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002). When an expert relies primarily on experience as the basis for his expertise, he must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1348 (M.D. Fla. 2019) (citing *Butler v. First Acceptance Ins. Co.*, 652 F. Supp. 2d 1264, 1272 (N.D. Ga. 2009)). An alleged expert witness is not necessarily disqualified merely because his experience does not match precisely the matter at hand. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). But there must be a "valid scientific connection" between the witness's areas of expertise and the "disputed facts in the case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

In his initial expert disclosure, Plaintiff did not state any qualifications to offer an expert opinion as to causation other than "SUFFICIENT KNOWLEDGE." (Doc. 18-1). Beyond reiterating his experiences as a patient, Plaintiff offers no information

indicating that he has any experience or specialized knowledge regarding medicine generally or any of the branches of medical science which might be relevant to causation, such as cardiology, toxicology, or pharmacology. Plaintiff argues that he is an expert based on his "10 years of being prescribed medications that he is allergic to" and a review of his medical records. This experience, however, does not indicate any particular expertise relevant to causation in his case. Plaintiff, therefore, has failed to demonstrate that he qualifies as an expert witness under Rule 702 or *Daubert*.[5] Because Plaintiff does not qualify as an expert, his opinion as to causation would be inadmissible at trial.

## 2. *A Conclusory Assertion Cannot Create a Genuine Issue*

Even if Plaintiff qualified as an expert witness under Rule 702, he could not withstand summary judgment because he offers a mere "naked conclusion" that his heart was damaged by Defendant's conduct. A "party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. General Motors*, 770 F.2d 984, 986 (11th Cir.1985); *Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir. 1997) (holding that the plaintiff failed to create a genuine issue for trial when her expert's affidavit provided "nothing more than a naked conclusion unsupported by

---

[5] Because Plaintiff is neither competent under Florida law nor qualified under Rule 702 and *Daubert*, the undersigned does not address the reliability and helpfulness of this proposed testimony.

any factual foundation"). An expert opinion is insufficient "to preclude summary judgment where it offers nothing but naked conclusions." *Vollmert v. Wisconin Dep't of Transp.*, 197 F.3d 293, 298 (7th Cir. 1999); *Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999) (holding that a conclusory statement in an expert's affidavit "is insufficient to create a genuine issue of a material fact" when the "affidavit is devoid of any specific facts whatsoever which support the" expert's conclusion).

In "order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993). In "the context of a motion for summary judgment, an expert must back up his opinion with specific facts." *United States v. Various Slot Machs. on Guam*, 658 F.2d 697, 700 (9th Cir. 1981). When a purported expert presents "'nothing but conclusions—no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected,' such testimony will be insufficient to defeat a motion for summary judgment." *Hayes*, 8 F.3d at 92 (quoting *Mid-State Fertilizer v. Exch. Nat'l. Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)). "For an expert report to create a genuine issue of fact, it must provide not merely the conclusions, but the basis for the conclusions." *Vollmert*, 197 F.3d at 298.

In this case, Plaintiff offers nothing but his conclusion that the medication which the VA administered to him caused further damage to Plaintiff's already-damaged heart. He does not explain how he arrived at that conclusion or what deductions or inferences support this conclusion. He does not state whether he considered other possibilities and, if not, why he declined to consider other possible causes of the damage to his heart. Without such information, it appears that Plaintiff's opinion is simply a guess or pure speculation, both of which would be inadmissible. *See United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988) ("[C]ertainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony."). Merely noting that one has a sincere and strong belief in a proposition is not enough to create a genuine issue for trial. *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."). Therefore, even if Plaintiff qualified as an expert, because he failed to provide an explanation for his opinion regarding causation, he has failed to establish that there is a genuine issue of material fact that warrants a trial.

### D.    Plaintiff's Misplaced Reliance on His Requests for Admissions

To overcome his failure to submit sufficient evidence to withstand summary judgment, Plaintiff argues that Defendant's failure to respond timely to Plaintiff's

requests for admissions created sufficient evidence to support the elements of his claim. (Doc. 23 at 1).

Rule 36 of the Federal Rules of Civil Procedure provides in part that a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection . . . ." Fed. R. Civ. P. 36(a)(3); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 686 (M.D. Fla. 2005) ("Failure to timely respond to requests for admissions results in *automatic* admission of the matters requested.").

Plaintiff asserts that on December 7, 2019, or January 10, 2020, he sent to Defendant by certified mail his requests for admissions. (Doc. 23 at 1). As evidence of this, Plaintiff provided only a copy of his requests for admissions. (*Id.* at 2). This document, however, does not contain a certificate of service as required under the Federal Rules of Civil Procedure, Local Rules for the Northern District of Florida, and this court's management order. *See* Fed. R. Civ. P. 5(d); N.D. Fla. Loc. R. 5.1(F); (Doc. 10 at ¶ 9). Because Plaintiff's requests for admissions lack a certificate of service, it necessarily does not state when Plaintiff actually served this document on Defendant and how Plaintiff effected service. Additionally, Plaintiff has not provided to this court the U.S. Postal Service receipt for the certified mail that he purportedly used to effect service of this document on Defendant. Such a receipt would definitively show when Plaintiff mailed to Defendant his requests for

admissions. (Doc. 23 at 2). Thus, Plaintiff has provided this court no evidence to support his bald assertion that he provided Defendant the requests for admissions on either December 7, 2019 or January 10, 2020.[6]

Defendant contends that Plaintiff did not serve his requests for admissions on Defendant on December 7, 2019 or January 10, 2020. Rather, according to Defendant, Plaintiff served his requests for admissions by facsimile transmission on January 31, 2020. (Doc. 24 at 2). Defendant further contends that it had "not provided any written consent to service by facsimile pursuant to Federal Rule of Civil Procedure 5(b). Consequently, Plaintiff's Request for Admission was never properly served." (*Id.*). In support, Defendant provides a copy of the facsimile machine printout containing Plaintiff's requests for admissions. (Doc. 24-1). It contains a header—typical of documents that were received by facsimile transmission—which contains the date and time: "01-31-20 12:42." (*Id.*). This header is evidence that Plaintiff's requests for admissions were received by Defendant, via facsimile, on January 31, 2020. (*Id.*).

Under Rule 5 of the Federal Rules of Civil Procedure, service may be accomplished by electronic means only if the served party consents in writing to that

---

[6] The fact that Plaintiff is uncertain even as to the date he submitted to Defendant the requests for admissions is further grounds for skepticism. This uncertainty as to the date also suggests that Plaintiff does not have a receipt from the U.S. Postal Service which would support his claim. In any event, he never produced any such receipt to this court.

type of service. Fed. R. Civ. P. 5(b). Neither party contends that Defendant consented to service by fax or other electronic means. Thus, service by fax was not an appropriate method of service.

Rule 6 of the Federal Rules of Civil Procedure provides that when a party must act within a specific time after being served and service is made under Rule 5(b) through "other electronic means," the responding party has three additional days to act. Fed. R. Civ. P. 6(d). Thirty days after January 31, 2020 was March 1, 2020. Because Rule 6 of the Federal Rules of Civil Procedure provides three additional days to act if a party is served by fax, Defendant's deadline to file its responses to the requests was March 4, 2020. Defendant provided a copy of its responses with a certificate of service dated March 4, 2020. (Doc. 24 at 2). Therefore, it appears that Defendant timely responded to Plaintiff's requests for admissions, and Rule 36(a)(3) is inapplicable to this case.

Finally, even if Defendant had failed to respond timely to Plaintiff's requests for admissions and Rule 36(a)(3) were operative, Plaintiff still would not have created a genuine issue of material fact as to causation. Plaintiff's requests for admissions do no touch on causation. Plaintiff requested only that Defendant admit the following:

1. That the Plaintiff is allergic to beta blockers, ace inhibitors, and diuretics.

2. That the Plaintiff was given beta blockers, ace inhibitors, and diuretics even though it is in his medical records that he is allergic.

3. The doctors and nurses were aware of the Plaintiff's intolerance to beta blockers, ace inhibitors and diuretics.[7]

4. The doctors and nurses continued to give Plaintiff beta blockers, ace inhibitors and diuretics despite their knowledge that Plaintiff could not tolerate them.

(Doc. 24-1 at 2).

Even if all of these statements were true and had been admitted by Defendant, Plaintiff still would not have created a genuine issue of material fact as to causation. These statements do not mention Plaintiff's heart or any damage that it suffered. Having an allergy to certain medication does not necessarily mean that administration of such medication will damage one's heart. Accordingly, these statements, even if true, do not create a genuine issue as to causation. Other than his own opinion, therefore, Plaintiff has not put forth evidence indicating that the beta blockers, ace inhibitors, and diuretics prescribed by VA employees were the cause of damage to Plaintiff's heart.

---

[7] This request for admission does not specify which doctors and nurses were aware of Plaintiff's intolerance, or even what "intolerance" means in this context. The undersigned assumes, however, that Defendant would reasonably understand Plaintiff to be referring to doctors and nurses employed by the VA.

## IV.   Conclusion

For the reasons set forth above, the undersigned respectfully

**RECOMMENDS** that:

1.     Defendant's motion for summary judgment, (Doc. 18), be

**GRANTED**.

2.     Summary judgment be entered in favor of Defendant.

3.     The clerk of the court be directed to close the case file and terminate all

pending motions.

At Panama City Beach, Florida, this <u>4th</u> day of June, 2020.


/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**